**BAVARIAN AUTOHAUS, INC., et al., Appellants,**

v.

**David C. HOLLAND, Appellee.**

**No. 17124.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

July 20, 1978.

Barlow, Lacy, Smith & Pollard, John H. Harris, Houston, for appellant Bavarian Autohaus, Inc.

Orgain, Bell & Tucker, Paul W. Gertz, Beaumont, for appellant BMW of North America, Inc.

David C. Holland, pro se.

PEDEN, Justice.

Bavarian Autohaus, Inc. and BMW of North America, Inc. (BMW) appeal by writ of error from a default judgment in favor of David Holland, who claimed unliquidated damages under the Deceptive Trade Practices and Consumer Protection Act (Tex. Bus. & Com.Code, Chapter 17) as a result of the defendants' alleged misrepresentations concerning the quality of their automobiles and their repair service. The trial court heard testimony on the plaintiff's damages and entered a judgment of $5,000 plus costs against the defendants jointly and severally. Bavarian Autohaus asserts error in the trial court's finding that citation was served on it, and both appellants contend that the plaintiff did not offer adequate proof of damages. The appellee has not responded. We reverse and remand.

Mr. Holland alleged in his petition that in March of 1974 he bought a used 1973 BMW Bavaria automobile from an individual. It had been driven 12,000 miles and was in excellent overall condition. Bavarian Autohaus, an authorized sales and service dealership for BMW, performed normal service work requested by plaintiff in September of 1974 and charged $169.57 for it. Four months later, when the car's odometer showed 25,425 miles, Holland consigned it to a used car dealer who located a purchaser willing to pay $6,950 if its engine could be made to operate smoothly and properly. Holland took the car to Bavarian Autohaus and was charged $138.35, but the rough running condition was not corrected, and the prospective purchaser cancelled the sale. In February of 1975, appellee returned the car to Bavarian Autohaus for the same problem. It kept the car until June 18, 1975, did not repair the malfunction and charged Holland $78.00. The fourth time

Holland returned the car to Bavarian Autohaus, no work was done and no charges were made, but it kept the car from July 21 through November of 1975.

Appellee further alleged that the automobile's exterior paint began to crack and peel in early 1975, and although he asked the appellants to rectify this condition, they took no action.

During the time in question, BMW advertised itself as the importer of very high quality automobiles and encouraged the owners of its cars to have their service work performed exclusively at its factory authorized facilities such as Bavarian Autohaus. This authorization was designed to create an impression on the owners of BMW cars that the mechanics at Bavarian Autohaus were trained at the BMW factory and that the service they gave was of the highest possible calibre. Despite its allegations of highest quality service, Bavarian Autohaus was unable to repair the malfunction in his car on any of its four efforts to do so; "Bavarian Autohaus thus misrepresented to plaintiff its expertise in the area of BMW service and in fact, performed the work in a substandard manner." Holland pleaded that the defendants represented that the services they offered to the public, and to the plaintiff in particular, were of a particular standard, quality, or grade, when in fact they were of another, as expressly prohibited by Sec. 17.46(*a*)(7) of the Texas Business and Commerce Code, V.T.C.A. (should be Sec. 17.46(*b*)(7) of the Code).

Plaintiff's petition also alleged that BMW misrepresented that its cars were free from manufacturing defects that were incurable by its own service agents.

The petition stated that the automobile had been diminished in value by the defendants' misrepresentations; their failure or inability to properly repair its engine and paint prevented his selling it at an agreed price of $6,950, and its current market value is approximately $4,500. "Plaintiff claims the approximately $2,450 difference between the agreed sale price in 1975 and the current market as his measure of dam-

ages and further asserts his right under Sec. 17.50(b)(1) of the Texas Bus. & Com. Code, V.T.C.A., to treble damages, court costs and reasonable attorney's fees." He also prayed for general relief.

Bavarian Autohaus argues under its first eight points of error that the default judgment should be set aside because the record does not affirmatively show that citation was properly served upon it. Ordinarily, presumptions are made in support of due service when it is recited in the judgment but not when a direct attack is made upon a default judgment. *McKanna v. Edgar,* 388 S.W.2d 927, 929 (Tex.1965). In that case, jurisdiction must affirmatively appear on the face of the record. *Flynt v. City of Kingsville,* 125 Tex. 510, 82 S.W.2d 934 (1935).

The citation recites that it was to be issued to Bavarian Autohaus, Inc., a Texas corporation, by serving its agent, Charles Vann. The original sheriff's return states that it was delivered to "Clint Hughes—V. Pres."

The amended return states:

"Received this writ on the *3* day of *FEB,* 1977, at 10:49 o'clock *A.M.,* and executed the same in Harris County Texas, on the *9* day of *FEB,* 1977, at 2:50 o'clock *P.M.,* by summoning the *BAVARIAN AUTOHAUS, INC.,* a corporation by delivering to *Clint Hughes,* in person *Vice President* of the said *Corporation* a true copy of this writ, together with accompanying certified copy plaintiff's original petition."

The amended return relates back and is regarded as filed when the original return was filed. *Lafleaur v. Switzer,* 109 S.W.2d 239, 241 (Tex.Civ.App.1937, no writ); *Nash v. Boyd,* 225 S.W.2d 649 (Tex.Civ.App.1949, no writ); 2 McDonald Texas Civil Practice 406, § 9.19 (1970).

Article 2.11 of the Texas Business Corporation Act makes the president, all vice presidents and the registered agent of a corporation agents for service of process. The original officer's return did not state that Bavarian Autohaus was served by serving "Clint Hughes—V. Pres." It did not recite, as it must, that process was delivered to the defendant, Bavarian Autohaus, through its named agent. *Brown-McKee, Inc. v. J. F. Bryan & Associates,* 522 S.W.2d 958, 959 (Tex.Civ.App.1975, no writ); *Firman Leather Goods Corp. v. McDonald & Shaw,* 217 S.W.2d 137, 140 (Tex. Civ.App.1948, no writ).

This original return was fatally defective, but the appellee procured an amended return sometime prior to the day of the hearing. Rule 118, Texas Rules of Civil Procedure, provides:

"At any time in its discretion and upon such notice and on such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

When this case was before the trial judge for assessment of damages, he noted that the court file did not show service of citation on Bavarian Autohaus, whereupon the appellee produced the amended return described above from his file and related that his secretary had taken it to the constable's office for correction. Further discussion followed, outside the hearing of the court reporter.

It is obvious that the trial court allowed the amended return to be filed before entering judgment next day. Although the statement of facts does not show that the provisions of Rule 118 were specifically invoked in the trial court, it appears that they were complied with. Bavarian Autohaus has not asserted that it was misled by the earlier return on the citation. We cannot say the trial court erred in allowing the already-amended return to be filed or in not requiring that notice of the amendment be given to Bavarian Autohaus.

Bavarian Autohaus argues that the amended return fails to comply with Rule 107, Texas Rules of Civil Procedure, because it does not show the manner of service. More specifically, Bavarian Auto-

haus asserts that the use of the words "writ" and "summoning" in the return render it defective, pointing out that "writ" was used prior to the adoption of the Rules of Civil Procedure and is still being used when referring to citations. See 2 McDonald, Texas Civil Practice 398, § 9.16 (1970). A return should be given a fair, reasonable and natural construction to its plain intent and meaning. *Brown-McKee, Inc. v. J. F. Bryan & Associates,* 522 S.W.2d 958, 959 (Tex.Civ.App.1975, no writ). In our case the citation was directed by the clerk to the defendant; it referred both to service of "this citation" and to service of "this writ." We hold that the return in this case fairly states the manner of service as required by Rule 107.

Bavarian Autohaus' ninth point asserts error in the court's entry of a default judgment without adequate proof of damages. BMW's first three points contend that the record contains no evidence or insufficient evidence to support a finding of damages regardless of the measure used. In point of error four, BMW argues that there is no evidence to support the judgment if the measure applied is the difference between the value of the automobile accepted and the value of the automobile if it had been as warranted. BMW's point 5 contends that the evidence is insufficient to support a finding on diminution in value from the date of purchase to the date of the hearing. Points six and seven state that the record contains no evidence or insufficient evidence to show that any repairs were reasonable and necessary. Appellant BMW argues in its eighth point of error that there is no evidence that repainting costs were incurred or that the estimate represented reasonable and necessary work on the automobile. Its ninth and final point contends that there is no evidence to support an award of attorney's fees.

The questions presented by both appellants necessitate a determination of the correct measure of damages in this Deceptive Trade Practices case. § 17.50(b) of the Texas Business & Commerce Code states:

"In a suit filed under this section, each consumer who prevails may obtain:

"(1) three times the amount of *actual damages* plus court costs and attorneys' fees reasonable in relation to the amount of work expended; [emphasis added].

\* . \* \*"

The Texas Supreme Court has not delineated the bounds of "actual damages" but has determined that treble damages are mandatory. *Woods v. Littleton,* 554 S.W.2d 662, 669 (Tex.1977). It also cited with approval statements from *McDaniel v. Dulworth,* 550 S.W.2d 395, 396 (Tex.Civ.App. 1977, no writ), that a liberal interpretation of the damages provision of the Act should be adopted to effectuate the legislative intent of encouraging aggrieved consumers to seek redress and deter unscrupulous sellers. See Maxwell, Damages Under The Deceptive Trade Practices—Consumer Protection Act, *Damages* (1977); Comment, Measure of Damages for Misrepresentation under the Texas Deceptive Trade Practices Act, 29 Baylor L.Rev. 135, 143 (1977). § 17.-50A(2) provides a defense to the trebling effect of the Act if the defendant tenders to the consumer "the cash value of the consideration received from the consumer or the cash value of the *benefit promised,* whichever is *greater.*" (emphasis added), plus expenses, including attorney's fees.

We now consider BMW's points of error four through nine and Bavarian Autohaus' ninth point. The sufficiency of the evidence to support the trial court's determination of damages in a default judgment is subject to review. *Johnson v. Brown,* 218 S.W.2d 317, 320 (Tex.Civ.App.1948, ref. n. r. e.).

As to the proof of damages, we summarize the testimony of the only witness, the plaintiff.

He bought a car (used) in March of 1974 and that September took it to the dealer for servicing. It was to have been put in excellent condition. Some work was done. In January, 1975, someone agreed to buy it for $6,950 if it could be made to run smoothly. He took it to the dealer to be repaired, but it wasn't, and he took it back around Febru-

ary 1. They had trouble in finding the cause of the problem, so he asked them to have the factory representative look at it. Four months later, in July, they said it was fixed. He again paid on the repair ticket, but the car still wasn't fixed. He took it back and they kept it until November 15; most of this delay was caused by waiting on the factory representative to examine the car's unusual problem. They said it suddenly started running fine and they didn't know why. Meanwhile the local market had deteriorated because the dealer's reputation had gotten bad.

In the spring of 1976 he got a serious inquiry, but his offer to take $4,750 was rejected. The total of the three repairs was right at $375.

Plaintiff's counsel then stated: "Your Honor, I would like to introduce in evidence here two repair tickets. They are not very legible. One was for $169.57 and the other one $138.35; we don't have the third repair ticket, but the total of all charges was $375. The third one was seven. The remainder will be $78 even." (The repair tickets are not in the record before us, although the court reporter certified that all documentary evidence was included.)

The appellee testified further. The paint had some light scratches on it, but it turned out to be completely defective. All German cars have this problem: the clear lacquer coat cracks and flakes off. He asked them about it and in November of 1975 they offered to repaint it for $278. They ultimately offered him a cash settlement as authorized by their representative. (Plaintiff here introduced an estimate by the Foreign Body Shop that it would charge $1,065 to paint the car.)

He would like to add that "it's very difficult to decide how much you lose from a sale on these cars, because the local market runs so much less than the national market. I am confident that the fact that they had the car for a year trying to fix it and gave it a substantial amount of inattention, caused the value during that time to decrease by somewhere between $1,000 and $2,000."

He is still driving the car, but its problem has returned and it needs other repairs.

No other proof of damages was offered.

■ In Texas the qualifications of a witness to give value testimony are knowledge of the general value-standard of things in that particular class and knowledge of the particular thing to be valued. The witness must have a knowledge of the market value (if there is one) in the vicinity, and it must be based in some degree on personal observation. Probably the most satisfactory rule is that anyone familiar with the values in question may testify. 2 McCormick & Ray, Texas Law of Evidence 257, Opinion Evidence § 1422 (1956).

■ When the owner of goods seeks to testify to their value, as distinguished from their value to him, the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value. 37 A.L.R.2d 998, citing many cases.

■ We agree with the appellants' points of error stating that the plaintiff offered insufficient evidence as to his damages. Mr. Holland did not declare that he know the car's market value. His testimony that its value decreased "by somewhere between $1,000 and $2,000" was lacking in certainty. A holding on damages may not be based on guess or surmise.

"While mathematical precision is not required to establish the extent or amount of one's damages, one must bring forward the best evidence of the damage of which the situation admits, and there must be some basis for reasonable inferences." *Gulf Coast Investment Corp. v. Rothman*, 506 S.W.2d 856, 858 (Tex.1974).

■ Evidence of unaccepted offers to buy or sell property is not competent evidence of its market value. *Hanks v. Gulf, Colorado & Santa Fe Rwy. Co.*, 159 Tex. 311, 320 S.W.2d 333, 336 (1959). The paint shop's estimate, absent testimony that the proposed work was reasonable and necessary, could not have been the basis for any recovery. *Dallas Railway & Terminal*

*Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377 (1956). Further, it is impossible to determine how much of the car's decline in market value was due to delay while waiting for the factory representative, as requested by the plaintiff. Finally, the testimony does not establish that all (or which part) of the items covered by the $375 in repair tickets were connected with efforts to make the engine run smoothly.

■ BMW's ninth point asks that the judgment be set aside if any part of the judgment is for attorney's fees because there is no evidence of the attorney's time in preparation of the case. The plaintiff must show the reasonableness of any recovery of attorney's fees. *Volkswagen of America, Inc. v. Licht*, 544 S.W.2d 442, 446 (Tex.Civ.App.1976, no writ); *Texas Business & Commerce Code* § 17.50(b)(1). There is no evidence to show what attorney's fee would be "reasonable in relation to the amount of work expended" by the plaintiff's attorney, and the judgment does not indicate that any damages were assessed for attorney's fees.

The judgment of the trial court is reversed and remanded for a new hearing on the issue of damages.