**BENEFIT PLANNERS, L.L.P., Appellant,**

v.

**RENCARE, LTD., Appellee.**

No. 04–01–00369–CV.

Court of Appeals of Texas, San Antonio.

May 8, 2002.

Opinion by: PHIL HARDBERGER, Chief Justice.

Benefit Planners, L.L.P. ("Benefit Planners") appeals a default judgment in favor of RenCare, Ltd. ("RenCare"). In nine issues, Benefit Planners contends that the default judgment should be reversed because: (1) the trial court did not have jurisdiction to render the default judgment; (2) the trial court did not conduct an evidentiary hearing with regard to damages; and (3) the trial court abused its discretion in denying Benefit Planners' motion for new trial. We agree that the trial court was without jurisdiction to render the default judgment; therefore, we do not address the other issues raised by Benefit Planners because they are not necessary to the final disposition of the appeal. *See* TEX.R.APP. P. 47.1. We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

RenCare provides kidney dialysis treatment for patients with end stage renal disease. Benefit Planners administers health insurance programs, including a group health plan under which a patient of RenCare was an insured. The patient is referred to as Patient Doe to protect his identity.

Edward C. Mainz, Jr., Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for Appellant.

Barbara E. Gardner, Barbara Gardner & Associates, Houston, Thomas J. Rothe, Law Offices of Thomas J. Rothe, P.C., Hondo, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, and SANDEE BRYAN MARION, Justice.

RenCare alleges that before providing services to Patient Doe, it contacted Benefit Planners to verify insurance coverage. Benefit Planners informed RenCare that Patient Doe was covered. RenCare proceeded to provide services to Patient Doe and sought payment from Benefit Planners for its charges that were not paid by Medicare. Benefit Planners paid only 2–3% of the amounts charged in RenCare's invoices. Efforts were made by RenCare to obtain full payment from Benefit Plan-

ners; however, Benefit Planners determined that no additional amounts were owed to RenCare.

On January 22, 2001, RenCare filed suit against Benefit Planners, alleging that Benefit Planners: (1) fraudulently and intentionally misrepresented that Patient Doe had full coverage for the dialysis services; (2) negligently misrepresented that Patient Doe had full coverage for the dialysis services; (3) misrepresented the terms of Patient Doe's insurance benefits in violation of article 21.21 of the Texas Insurance Code ("Code"); and (4) failed to promptly pay RenCare's claims in violation of articles 21.55 and 20A.09(j) of the Code. Citation was issued to "Benefit Planners, L.L.P., Tom Cusick, Jr. (Registered Agent)." The return of citation states that the citation was delivered to "Tom P. Cusick, Jr., Reg. Agent" on February 21, 2001; therefore, the answer date was March 19, 2001.

On March 26, 2001, RenCare filed its motion for default judgment. Attached to the motion was an affidavit signed by Bob Ehl, the administrator of RenCare, to evidence the amount of damages RenCare had incurred. Ehl referenced an account record attached as an exhibit to RenCare's original petition which he stated was made and kept in the ordinary course of RenCare's business. Ehl stated that when the petition was filed the account record reflected that the amount owed by Benefit Planners to RenCare as of October 31, 2000 was $413,937.03. Ehl further stated that since October 31, 2000, an additional $97,392.60 had become due, making the total outstanding amount $511,329.63. If Benefit Planners had not represented that Patient Doe was covered, Ehl stated "it is quite likely that [RenCare] would have taken in another patient in the place of this one, another patient with better paying commercial insurance coverage." Ehl

noted that once a patient is accepted, RenCare has a "professional commitment of continuity of care" given the nature of the dialysis services being provided. RenCare's attorneys also filed affidavits attaching a list of the attorneys' fees and expenses that had been incurred. Based on the motion and the affidavits, the trial court entered a default judgment for $511,329.63 in damages, $5,992 in attorneys' fees, $327.29 in expenses, plus prejudgment interest on the liquidated damage amount of $413,937.03.

On April 23, 2001, Benefit Planners filed its original answer and motion for new trial and motion to set aside default judgment. The motion asserted that RenCare had agreed to give Benefit Planners an extension of time to answer the suit. The motion further asserted that the default judgment was improperly granted in the absence of an evidentiary hearing. Finally, the motion asserted that Benefit Planners satisfied the equitable grounds for a new trial. Attached to the motion was the affidavit of William N. McCloskey, Benefit Planners' insurance adjuster, who stated that RenCare's attorney, Barbara Gardner, had agreed to an extension of time to enable Benefit Planners to hire an attorney. On the day of the hearing, RenCare filed a response to the motion stating Gardner did not agree to an extension, Benefit Planners did not allege a meritorious defense, and an evidentiary hearing was not required with regard to damages given the affidavits that were presented to the trial court. The trial court denied Benefit Planners' motion, and Benefit Planners timely filed this appeal.

### DEFECTIVE SERVICE

██ It is a basic tenet of jurisprudence that the law abhors a default because equity is rarely served by a default. *Hock v. Salaices*, 982 S.W.2d 591, 593

(Tex.App.-San Antonio 1998, no pet.). "[A] default judgment cannot withstand direct attack by a defendant who complains that he was not served in strict compliance with applicable requirements." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990). Defective service can be raised for the first time on appeal. *Id.* at 837.

1. *Was Service Defective?*

 "There are no presumptions in favor of valid issuance, service, and return of citation in the face of a [direct] attack on a default judgment." *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex.1985). "Moreover, failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Id.* When the attempted service of process is invalid, the trial court acquires no *in personam* jurisdiction over the defendant, and the trial court's judgment is void. *Pharmakinetics Laboratories, Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex.App.-San Antonio 1986, no writ).

The citation in this case was addressed as follows:

TO: BENEFIT PLANNERS, L.L.P.

TOM P. CUSICK, JR. (REGISTERED AGENT)

194 SOUTH MAIN ST.

BOERNE, KENDALL COUNTY, TEXAS 78006–2300

 The officer's return reads as follows (italicized portions are handwritten in the return):

CAME TO HAND ON THE *5* DAY OF *Feb*, AT *8:21* O'CLOCK *A.M.* AND EX-ECUTED IN *Kendall* COUNTY, TEXAS BY DELIVERING TO *Tom P. Cusick, Jr., Reg. Agent* ON THE *21* DAY OF *Feb*, 2001 AT *11:20* O'CLOCK *A.M.* THIS CITATION TOGETHER WITH THE ACCOMPANYING COPY OF THE PETITION, HAVING FIRST AT-TACHED SUCH COPY OF SUCH PE-TITION TO SUCH COPY OF CITA-TION AND ENDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

Benefit Planners contends that the return was defective because it failed to state that the petition was delivered to Benefit Planners, L.L.P. through its registered agent Tom P. Cusick, Jr. The authority cited by Benefit Planners supports this contention.[1]

For example, in *Barker CATV Const., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 791 (Tex.App.-Houston [1st Dist.] 1999, no pet.), the citation was issued to: "BARK-ER CATV CONSTRUCTION, INC., A CORPORATION BY SERVING REGIS-TERED AGENT, JAMES M. BARKER." The return stated service was executed on "James Barker." *Id.* The court noted that the return failed to establish two necessary items: (1) that James Barker was the registered agent for Barker CATV Construction, Inc.; and (2) that Barker CATV Construction, Inc. was served. *Id.* at 793. The court asserted that the return did not state, "as it must, that it was delivered to the defendant, Barker CATV Construction, Inc., through its registered agent James M. Barker." *Id.*

A similar result was reached in *Verlander Enterprises, Inc. v. Graham*, 932 S.W.2d 259, 261 (Tex.App.-El Paso 1996,

---

1. RenCare argued that this court should consider "the petition with the citation and return in their entirety" to determine whether service was valid. However, in *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex.1994), the Texas Supreme Court rejected a similar argument made by the plaintiffs that the return was valid if viewed in connection with the information contained in the citation. Similarly, we reject RenCare's argument.

no writ). In that case, citation was issued to "VERLANDER ENTERPRISES, INC. d/b/a VILLAGE INN, through its authorized agent for service of process, MR. JIM GORE." *Id.* at 260. The return stated that the petition was served on "Jim Gore." The court reasoned that the return failed to establish: (1) that the person served was in fact the defendant's agent for service of process; and (2) that the corporate defendant was served. *Id.* at 261. The court concluded that the return "did not state, as it must, that it was delivered to the defendant Verlander through its vice-president, Jim Gore." *Id.*

Finally, in *Bavarian Autohaus, Inc. v. Holland,* 570 S.W.2d 110, 113 (Tex.Civ. App.-Houston [1st Dist.] 1978, no writ), the citation recited that it was to be issued to "Bavarian Autohaus, Inc., a Texas corporation, by serving its agent, Charles Vann." The original return stated that it was delivered to "Clint Hughes V. Pres." *Id.* The court initially noted that Clint Hughes was a proper agent for service because the Texas Business Corporation Act provides that vice-presidents are agents for service of process. *Id.* at 113. Therefore, in that case, the return was not defective for failing to establish that Clint Hughes was in fact the corporation's agent for service of process. However, the court concluded that the return was defective because it "did not state that Bavarian Autohaus was served by serving 'Clint Hughes V. Pres.' It did not recite, as it must, that process was delivered to the defendant, Bavarian Autohaus, through its named agent." *Id.* Therefore, even when a return establishes

that the person served was an agent for service of process, the return is still defective if it does not establish that the corporation was served by reciting that the corporation was served by serving or through the agent.

Our case is factually similar to *Holland.* The only distinction is that in our case the person to whom the citation was delivered was identified as "Reg. Agent" as opposed to "V. Pres." However, the "Reg. Agent" notation only serves to establish Cusick's identity as an agent for service of process; it fails to establish that Benefit Planners was served. As one court has noted, although the strict compliance requirements "sometimes lead the courts to rather weird conclusions, preventing us from making even the most obvious and rational inferences, we believe good public policy favors the standard. The end effect of our application of the strict compliance standard is an increased opportunity for trial on the merits. [T]his policy justifies what may at first blush seem a hyper-technical rule." *Verlander Enterprises, Inc. v. Graham,* 932 S.W.2d at 262.

We also note that RenCare was not forced to rely on the defective return in seeking a default judgment. As Ren-Care's attorney's service description summary reveals, RenCare's attorney reviewed the return of service before forwarding it to the trial court for filing and before filing the motion for default judgment.[2] At that time, RenCare's attorney should have discovered the defect in the return and obtained an amended

---

2. The attorney's document entitled "Attorney's Fees and Expenses" attached to the attorney's affidavit contains the following entries: (1) January 31, 2001—Forward Original Petition and Citation to Kendall County Sheriff—00.25; (2) March 14, 2001—Review file for status; call from client; call to T. Rothe re: procedures; review Return of Service; forward return to Medina County Clerk to file—00.50; (3) March 19, 2001—Receive notice from Medina County Clerk on filing return of service; review Notice of Trial Setting; call to T. Rothe re: same—00.50; (4) March 20, 2001—Draft M/Default Judgment; call to/from T. Rothe on procedures; draft and fax affidavit to client—02.75.

return to reflect proper service. As the Texas Supreme Court has stated:

> It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. This responsibility extends to seeing that service is properly reflected in the record. The Rules of Civil Procedure allow for liberal amendment of the return of service to show the true facts of service. If the facts as recited in the sheriff's return, pre-printed or otherwise, are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment.

*Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex.1994).

### 2. Waiver of Defective Service Complaint

RenCare contends that Benefit Planners waived its complaint of defective service by judicially admitting that it was served. *See Wilson v. Dunn*, 800 S.W.2d at 837 (noting defendant can waive complaint of defective service by conceding the issue). Benefit Planners responds that proper service is a question of law that cannot be judicially admitted. *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex.App.-San Antonio 1997, no pet.) (holding party may not judicially admit a question of law). Benefit Planners' contention that a complaint regarding defective service cannot be waived is contrary to the Texas Supreme Court's holding in *Wilson v. Dunn*, 800 S.W.2d at 837. In *Wilson*, the Texas Supreme Court agreed that the defendant "could have waived his complaint of service by conceding the issue;" however, the court concluded that the defendant had not conceded the issue because he only admitted "receipt" of the suit papers, not "service." *Id.* The court distinguished two prior opinions, stating that in those cases "the defendant admitted not simply that

process was received, but that it was 'duly served.'" *Id.*

Benefit Planners also contends that a complaint of defective service cannot be waived by a judicial admission occurring after the default judgment was entered because the subsequent admission cannot revive a void default judgment. Benefit Planners' contention is supported by at least one court. In *McGraw-Hill, Inc. v. Futrell*, 823 S.W.2d 414, 417 (Tex.App.-Houston [1st Dist.] 1992, writ denied), the Houston court noted that the notice of removal containing the alleged judicial admission was filed after the default judgment was entered, and an "admission regarding acceptance of service [cannot] revive a default judgment taken when the court lacked jurisdiction." However, the Houston court's holding seems to contradict the holding in *Wilson*. In recognizing that a defective service complaint could be waived, the *Wilson* court cited two cases to demonstrate the manner in which waiver could occur: *First Nat'l Bank v. Peterson*, 709 S.W.2d 276 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) and *Hurst v. A.R.A. Mfg. Co.*, 555 S.W.2d 141 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n.r.e.). In both of those decisions, the courts relied on statements made after the default judgment was rendered. In *Peterson*, the court found waiver based on statements made in an appellant's brief and an affidavit filed in support of a motion for new trial. 709 S.W.2d at 280–81. In *Hurst*, the court found waiver based on statements made in an appellate brief. 555 S.W.2d at 142. Therefore, by citing *Peterson* and *Hurst* as authority, the *Wilson* court appears to have adopted the position that judicial admissions made after the default judgment is rendered can result in the waiver of a defective service complaint.

Assuming that statements made in an affidavit in support of a motion for new trial can result in a waiver of a defective service complaint, the statements made in the affidavits in this case do not cure the defect in the return so as to judicially admit proper service. In the instant case, the following statements were made regarding service in the affidavits attached to Benefit Planners's motion for new trial:

On or about February 21, 2000, Benefit Planners' agent, Tom P. Cusick, Jr., was served with process in the above-styled case. Mr. Cusick forwarded the suit papers to Mr. Richard Medrano, Benefit Planners' Senior Vice President of Customer Service. Ms. Renay Hankins, administrative assistant to Mr. Medrano, in turn, forwarded the suit papers to me. (Affidavit of William N. McCloskey, Insurance Adjuster for TIG Specialty Insurance Solutions, of which Benefit Planners was a client)

I am the President and registered agent for service of process for Benefit Planners, L.L.P. In my capacity as registered agent, I am familiar with the process and import of being served with a lawsuit and the subsequent process of obtaining legal assistance.

On February 21, 2001, I was personally served with the citation and original petition in Cause No. 01–01–15419–CV, *RenCare, Ltd. v. Benefit Planners, L.L.P.,* [i]n the 38th District Court of Medina County, Texas. (Affidavit of Tom P. Cusick, Jr.)

On or about February 22, 2001, I received the citation and original petition in Cause No. 01–01–15419–CV, *RenCare, Ltd. v. Benefit Planners, L.L.P.,* filed in the 38th District Court of Medina County, Texas. These papers were forwarded to me by Tom P. Cusick, Jr., the President and registered agent for service of process of Benefit Planners, L.L.P. (Affidavit of Richard Medrano, Senior Vice President of Customer Service for Benefit Planners)

Although Cusick states that he was personally served with citation and that he is the registered agent for process for Benefit Planners, this information already appears in the citation and the return. The affidavit does not cure the defect because Cusick does not state that he was personally served with citation as registered agent for Benefit Planners. Although the implication can be drawn that Cusick was served in that capacity, strict standards govern judicial admissions, *Pitman v. Lightfoot,* 937 S.W.2d 496, 514 (Tex.App.-San Antonio 1996, writ denied), and we should not use an implication or inference to create a judicial admission particularly in the default judgment context. As previously noted, the strict compliance requirements in the default judgment context prevent us from making even the most obvious and rational inferences. *Verlander Enterprises, Inc. v. Graham,* 932 S.W.2d at 262.

The statements made in the affidavits reflect actual knowledge of the pendency of the suit, and the actions taken by Benefit Planners' representatives were consistent with that knowledge. However, actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render a default judgment. *Wilson v. Dunn,* 800 S.W.2d at 836–37. The actions taken have no relevance in the absence of proper service.

## CONCLUSION

Because the return failed to recite that citation was delivered to Benefit Planners by serving its registered agent, the service of process was invalid. The trial court acquired no *in personam* jurisdiction over Benefit Planners, and the trial court's

judgment is void. The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.