# NO. 12-12-00053-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEUTSCHE BANK TRUST COMPANY, N.A.,* § *APPELLANT* | | *APPEAL FROM THE 402ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JASON ANDERS AND LESLI ANDERS, APPELLEES* | § | *WOOD COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Deutsche Bank Trust Company, N.A. appeals the trial court's denial of its motion for new trial after the granting of a default judgment in favor of Jason and Lesli Anders. The Bank raises two issues on appeal. We reverse and remand.

### BACKGROUND

On October 11, 2011, Jason and Lesli Anders (Appellees) filed their original petition and request for temporary restraining order and injunctive relief against the Bank. The Bank was served by certified mail on October 13, 2011. The trial court entered a default judgment against the Bank on November 8, 2011, granting Appellees their requested relief and awarding them $10,500 in attorney's fees. The Bank's original answer and request for disclosure was filemarked on November 14, 2011.[1] The Bank filed a timely motion for new trial alleging a calendaring mistake. After conducting a hearing on the Bank's motion for new trial, the trial court denied the motion, and this appeal followed.

---

[1] The Bank's original answer was mailed on November 10, 2011.

In its first issue, the Bank contends that the trial court abused its discretion by not setting aside the default judgment and by refusing to grant a new trial when all three elements of the *Craddock* test were met. The only contested element of the *Craddock* test at trial and on appeal is whether the Bank's failure to answer before judgment was due to conscious indifference.

## Standard of Review

We review a trial court's ruling on a motion for new trial for abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). The historical trend in default judgment cases is to liberally grant new trials because the law prefers that cases be disposed of on their merits wherever possible, rather than by default. *See Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012); *Miller v. Miller*, 903 S.W.2d 45, 47 (Tex. App.—Tyler 1995, no writ).

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was (1) not intentional, or the result of conscious indifference on its part, but was due to a mistake or accident, (2) the motion for new trial sets up a meritorious defense, and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (1939). A trial court abuses its discretion when it denies a motion for new trial if all three elements of the *Craddock* test are met. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

## Applicable Law

When a default judgment is attacked by a motion for new trial, the critical question is "[w]hy did the defendant not appear?" *Milestone Operating, Inc. v. Exxonmobil Corp.*, No. 11-0647, 2012 WL 5285085, at *1 (Tex. Oct. 26, 2012). Consciously indifferent conduct occurs when the defendant knew it was sued but did not care. *Id.* at *2. The first *Craddock* element— "conscious indifference"—is satisfied when the defendant's factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff. *Sutherland*, 376 S.W.3d at 755. The absence of an intentional failure to answer rather than a real excuse for not answering is the controlling fact. *Id.* at 756. Thus, some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care. *See In re R.R.*, 209 S.W.3d

2

112, 115 (Tex. 2006). It has also been held that the presence of a mistake precludes the presence of an intentional act. *See Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 83 (Tex. 1992). This means that a mistake or accident may negate any intention not to file an answer. *See id.*

In conducting our analysis, we look to the knowledge and acts of the defendant to determine whether the defendant acted with conscious indifference. *Evans*, 889 S.W.2d at 269. When a defendant relies on an agent to file an answer, it must demonstrate that both it and its agent were free of conscious indifference. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Titan Indem. Co. v. Old S. Ins. Group, Inc.*, 221 S.W.3d 703, 708 (Tex. App.— San Antonio 2006, no pet.). If the factual assertions in the defaulting party's affidavits are not controverted, the defendant satisfies its burden when its affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant. *Id.* In determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record. *Id.* at 709.

**The Evidence in the Record**

In its motion for new trial, the Bank included the affidavit of Nathan Boucher, vice president and senior counsel of American Home Mortgage Servicing, Inc. (AHMSI), a servicing company for investors of security trusts. Boucher also testified during the hearing on the Bank's motion. Boucher's affidavit and testimony provided the explanation for the Bank's default.

According to Boucher, AHMSI is hired to represent lenders and investors nationwide. The Bank is among the investors represented by AHMSI. When an investor is sued, it sends the "lawsuit" to AHMSI, and the case is entered into AHMSI's litigation tracking system. It is then Boucher's responsibility to assign the case to outside counsel and take additional steps to defend the lawsuit.

The Bank was served with a copy of the petition in Appellees' lawsuit through its registered agent on October 13, 2011. Accordingly, the answer date was November 7, 2011.[2] The Bank mailed the petition to AHMSI on October 20, 2011. On October 24, 2011, AHMSI received the petition and uploaded the case into its litigation tracking system. Thus, the date of entry for the lawsuit was October 24, 2011. The case was then forwarded to Boucher for assignment to outside counsel and for internal management.

---

[2] *See* TEX. R. CIV. P. 99.

3

The date of service for Appellees' lawsuit was not entered into AHMSI's litigation tracking system because it was not shown on the cover sheet attached to the petition. There were no errors in logging the lawsuit into the system. Boucher testified that he sorts the cases to be assigned to outside counsel, and he first attempts to sort them by the date of service. But here, Boucher sorted the cases by their date of entry into the system. He explained that the sorting of cases by date of entry "typically . . . works" because AHMSI normally receives the lawsuits from its investors shortly after they are served. In this case, however, AHMSI received the case eleven days after the Bank was served.

Boucher testified that when he sorted the cases, he was overseeing approximately eight hundred cases nationwide and at the time of sorting, he had thirty-six cases to assign. He explained that he "mistook the date the case was assigned to [him] for the service date and did not assign the case to outside counsel in time to file a timely answer." Thus, Boucher's mistake occurred because he "had been calculating [the answer date] from October 24th, instead of October 13th."

Because Boucher believed the Bank had been served on October 24, he also believed there was "plenty of time to file a general denial." Boucher assigned the case to outside counsel on November 9, 2011, and the Bank's answer was mailed the next day.

**Analysis**

Boucher's affidavit and testimony describes the relationship between AHMSI and the Bank in general terms—the Bank hires AHMSI to assign lawsuits to outside counsel. His affidavit and testimony show the dates on which AHMSI received Appellees' lawsuit from the Bank. It is clear from the record that there was no breakdown in communication between the Bank and AHMSI. Therefore, the Bank was not required to offer additional testimony to show its lack of conscious indifference. *See* ***Fidelity & Guaranty Ins. Co. v. Drewery Constr. Co., Inc.***, 186 S.W.3d 571, 575 (Tex. 2006) (affidavits sufficient when they describe procedures and explain where breakdown occurred).

Appellees cite ***Freeman v. Pevehouse***, 79 S.W.3d 637 (Tex. App.—Waco 2002, no pet.) and ***BancTEXAS McKinney, N.A. v. Desalination Sys., Inc.***, 847 S.W.2d 301 (Tex. App.— Dallas 1992, no pet.) to support their contention that the Bank failed to satisfy its burden of proof because no one from the Bank testified at the motion for new trial hearing. We construe

4

Appellees' argument to be that testimony from the Bank was required to explain what happened between the date the Bank was served and the date the Bank forwarded the lawsuit to AHMSI. But it is clear from the record that the Bank's forwarding of the lawsuit to AHMSI was within the time period for filing an answer. By the time the lawsuit was in AHMSI's litigation tracking system, it was Boucher's sole responsibility to make sure that an answer was timely filed. Thus, no additional testimony was required.

Here, it was Boucher's calendaring error that caused the default judgment. Furthermore, in *Freeman* and *BancTEXAS*, the courts found that the defendants' evidence was insufficient because the defendants did not describe how the citations were lost. *Freeman*, 79 S.W.3d at 645; *BancTEXAS*, 847 S.W.2d at 302. But in *Fidelity*, the supreme court expressly held that an affidavit from the person who lost service documents describing how the loss occurred was not required. *See Fidelity*, 186 S.W.3d at 575 ("People often do not know where or how they lost something—that that is precisely why it remains 'lost.'").

Appellees also contend that the Bank's excuse should not negate conscious indifference in light of the education, training, experience, resources, and high responsibility of the Bank and its agents. To support this argument, they cite *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 874 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). In *Folsom*, the registered agent received two separate citations. *Id.* at 873. She forwarded the subsequent citation with a memorandum addressed to a senior officer and owner in which she stated, "[T]his is probably already in the hands of our attorney and insurance company, but we were just served this citation today. . . ." *Id.* But there was no evidence that anyone took any action by forwarding either citation to the defendant's attorneys. *See id.* at 873-75. Instead, the evidence showed only that the defendant's agents assumed "something was being done." *Id.* at 874.

Here, upon being served, the Bank took action by forwarding Appellees' petition to its agent, AHMSI. AHMSI also took action by entering the case into its litigation tracking system. Unlike *Folsom*, the mistake that occurred in this case was not an assumption that "something was being done." Instead, the mistake the Bank's agent made was believing that the service date was October 24 when it was actually eleven days earlier. Therefore, *Folsom* does not apply.

Finally, Appellees direct our attention to *Munson v. State*, 576 S.W.2d 440, 442 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.) to support their contention that Boucher's testimony

5

constitutes an unbelievable excuse and is inadequate to show a lack of conscious indifference. But *Munson* is distinguishable because the defendant's excuse in *Munson* rested on disputed facts, and therefore witness credibility was an issue. *Id.* at 441. The *Munson* court held that a trial court is not required to grant a new trial merely on the advancement of an excuse, no matter how unbelievable. *Id.* at 442. Here, there are no facts in the record to dispute Boucher's testimony that he did not know until after the default judgment had been signed that the Bank was served with notice of Appellees' lawsuit eleven days before it was entered into AHMSI's litigation tracking system.

Although Appellees offered evidence that AHMSI's tracking system has automated deadline notifications, this does not controvert Boucher's testimony that he mistakenly believed the Bank was served on October 24, 2011. *See Milestone Operating, Inc.*, 2012 WL 5285085, at *2 (testimony that someone saw agent receive papers did not controvert agent's testimony that he did not recall being served). Furthermore, if the only date entered into the tracking system was October 24, the notification of the upcoming answer deadline for Appellees' lawsuit would have been incorrect and thus, ineffective.

## Conclusion

We conclude that the evidence in the record here shows that the Bank's failure to answer was neither intentional nor the result of consciously indifferent conduct. *See id.* To the contrary, Boucher's testimony detailed a system established between the Bank and AHMSI for responding to lawsuits in order to prevent the rendition of no-answer default judgments. *See Fidelity*, 186 S.W.3d at 576. But because the date of service was not logged into the system, the Bank's agent incorrectly treated the lawsuit's date of entry as the date of service, causing the calendaring mistake. Thus, the trial court erred in concluding that the Bank had not satisfied the first requirement of *Craddock*. Accordingly, we sustain the Bank's first issue.

### ATTORNEY'S FEES

In its second issue, the Bank contends that the trial court's award of attorney's fees is not supported by legally or factually sufficient evidence.

The payment of attorney's fees accrued in obtaining a default judgment should be paid by the defendant in the event that a new trial is granted. *See United Beef Producers, Inc. v.*

6

*Lookingbill*, 532 S.W.2d 958, 959 (Tex. 1976); *Craddock*, 133 S.W.2d at 126 (new trial should be granted if it will not delay or otherwise work an injury to the plaintiff). But a defendant should not be required to reimburse the plaintiff for all expenses incidentally incurred in obtaining the default judgment, or for expenses that may be incurred as the result of a new trial. *See Lookingbill,* 532 S.W.2d at 959 (holding that determination of which expenses a defendant must bear should be left to sound discretion of trial court, considering not only travel expenses, but also attorney's fees, loss of earnings caused by trial attendance, expenses of witnesses, and any other expenses arising from defendant's default).

Testimony of the total amount due on an unliquidated damages claim, such as attorney's fees, may be supplied by affidavit. *See Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811 (Tex. App.—Waco 2007, no pet.).

The Bank concedes that Appellees are entitled to be compensated for the attorney's fees incurred in obtaining the default judgment. The record before us contains an affidavit of attorney's fees with an invoice attached, and the trial court awarded a total of $10,500 in attorney's fees. But because we are remanding the cause for a new trial on the merits, we must also remand the issue of attorney's fees because the award was based on the merits of Appellees' claims. Appellees are entitled to be reimbursed for only the attorney's fees they incurred as a result of the default judgment. *See Aero Mayflower Transit Co., Inc. v. Spoljaric*, 669 S.W.2d 158, 162 (Tex. App.—Fort Worth 1984, writ dism'd w.o.j.). Accordingly, we sustain Appellant's second issue.

## DISPOSITION

Having sustained the Bank's first and second issues, we *reverse* the judgment of the trial court and *remand* the cause for a new trial subject to the trial court's determination of Appellees' expenses in securing the default judgment and a reimbursement of that sum by the Bank. *See id.*

### JAMES T. WORTHEN
Chief Justice

Opinion delivered January 16, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JANUARY 16, 2013**

**NO. 12-12-00053-CV**

**DEUTSCHE BANK TRUST COMPANY, N.A.,**
Appellant
v.
**JASON ANDERS AND LESLI ANDERS**,
Appellees

Appeal from the 402nd Judicial District Court
of Wood County, Texas. (Tr.Ct.No. 2011-643)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for a new trial** subject to the trial court's determination of the expenses incurred by the Appellees, Jason Anders and Lesli Anders, in obtaining their default judgment**;** and that all costs of this appeal are hereby adjudged against the Appellees, **JASON ANDERS AND LESLI ANDERS**, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

# THE STATE OF TEXAS
# M A N D A T E

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


**TO THE 402ND DISTRICT COURT of WOOD COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 16th day of January, 2012, the cause upon appeal to revise or reverse your judgment between

**DEUTSCHE BANK TRUST COMPANY, N.A., Appellant**

**NO. 12-12-00053-CV; Trial Court No.**

Opinion by James T. Worthen, Chief Justice.

**JASON ANDERS AND LESLI ANDERS, Appellees**

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for a new trial** subject to the trial court's determination of the expenses incurred by the Appellees, Jason Anders and Lesli Anders, in obtaining their default judgment; and that all costs of this appeal are hereby adjudged against the Appellees, **JASON ANDERS AND LESLI ANDERS**, in accordance with the opinion of this court; and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the _____ day of _____, 201____.

CATHY S. LUSK, CLERK


By:_____
    Deputy Clerk