111 E. Locust, Suite. 500
Angleton, TX 77515

www.brazoria-county.com

979-864-1316
979-388-1316
281-756-1316



FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
11/10/2015 10:29:48 AM
CHRISTOPHER A. PRINE
Clerk

# RHONDA BARCHAK

## DISTRICT CLERK

### BRAZORIA COUNTY

## NOTICE OF ASSIGNMENT ON A **RESTRICTED** APPEAL

11/10/2015

TO:    FOURTEENTH COURT OF APPEALS

RE:    Cause No. **82302-CV, in the 412th District Court**

Style;   **ASHLEY NICOLE RAMSEY VS. IRONMAN EXPRESS LLC, ET AL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CASE INFORMATION:

DATE OF APPEALABLE ORDER/JUDGMENT:        11/3/15 & 7/1/15
NOTICE OF APPEAL:        11/9/15
MOTION FOR NEW TRIAL:        8/26/15
ORDER OVERRULING MOT N/T     N/A
REQUEST FOR FINDING OF FACTS AND CONCLUSIONS OF LAW FILED:  NO
REQUEST FOR CLERK'S RECORD:  NO
REQUEST FOR REPORTERS RECORD FILED:   NO
METHOD OF DELIVERY:        TAMES PORTAL
JUDGE PRESIDING:        W. EDWIN DENMAN
COURT REPORTER:        JILL FRIEDRICHS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPELLANT:        ERIC RAYE RIEGER

ATTORNEY(S) FOR APPELLANT:  JEFFRY P. O'DEA
TEL.:    713-650-8700
FAX :    713-655-8383
EMAIL ADDRESS:   jodea@tx-counsel.com
TEXAS BAR NO.:    15192400

Filed for Record
8/26/2015 12:18:25 PM
Rhonda Barchak, District Clerk
Brazoria County, Texas
82302-CV
Kim Mire, Deputy

NO. 82302-CV

| | | |
|---|---|---|
| ASHLEY NICOLE RAMSEY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| | § | BRAZORIA COUNTY, TEXAS |
| ERIC RAYE RIEGER, and | § | |
| IRONMAN EXPRESS, LLC | § | |
| | § | |
| Defendants | § | 412th JUDICIAL DISTRICT |

## DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT, MOTION FOR NEW TRIAL, AND MOTION FOR REMITTITUR

TO THE HONORABLE COURT:

Defendants, IRONMAN EXPRESS, LLC and ERIC RAYE RIEGER, file this Motion to Set Aside Default Judgment, Motion for New Trial, and Request for Remittitur, respectfully requesting the Court to set aside the July 1, 2015, default judgment (and the June 12, 2015, interlocutory default judgment) entered in favor of Plaintiff and, in the interest of justice and fairness, grant a new trial. Defendants show the following:

### EXHIBITS IN SUPPORT OF MOTION

Exhibit 1:  Affidavit of Matthew Garrett, Defendant Ironman's agent for service of process

Exhibit 2:  Affidavit of Eric Raye Rieger

Exhibit 3:  Affidavit of Logan Batlle, licensed insurance agent

Exhibit 4:  File copy of July 10, 2015 notice letter from district clerk

## INTRODUCTION

— *"It is a basic tenet of jurisprudence that the law abhors a default because equity is rarely served by a default"*—[1]

Plaintiff, Ashley Nicole Ramsey ("Ramsey") filed suit on January 15, 2015, alleging that four Defendants—Dustin Ray Condry, Jorg Condry, Eric Raye Rieger, and Ironman Express, LLC—were liable to her for personal injuries stemming from two separate April 10, 2015 auto accidents on southbound SH 288. According to her petition, Ramsey alleges she was completely stopped in traffic on southbound SH 288, which had become backed-up due to a rear-end collision ahead of her involving Rieger and Ironman. Separately, during the time Ramsey was stopped in traffic, her vehicle was struck from behind by a vehicle owned by Jorg Condry and operated by Dustin Condry. Ramsey alleges that Dustin Condry failed to timely apply his brakes to avoid striking her car.

Ramsey alleged that all four Defendants were negligent. She also alleged that Rieger's and Ironman's conduct proximately caused her claimed injuries, even though her car was struck by Condry, not Rieger. The vehicle Rieger was driving was no where near Ramsey at the time Condry hit Ramsey's vehicle. (*See also* Ex. 1, ¶ 4; Ex. 2, ¶ 3). The first accident—which involved Rieger and another driver, Seyda (the "Seyda accident")—occurred well before, and quite a distance away from, the Condry-Ramsey accident.[2]

Neither Rieger nor Ironman timely filed answers in the instant proceeding. As explained more fully below, Defendants' failure to file an answer was the result of a simple, yet regrettable, mistake by Ironman's insurance agent. Ramsey then filed a Motion for Default Judgment. Upon

---

[1] *Titan Indem. Co. v. Old South Ins.*, 221 S.W.3d 703 (Tex. App.—San Antonio 2007, no pet.).

[2] Rieger and Ironman were sued as a result of the Seyda accident. (Ex. 1, ¶ 3; Ex. 2, ¶ 2). Both Rieger and Ironman forwarded the suit papers to the insurance agent. *Id*. The suit was defended and ultimately settled. *Id*.

information and belief, the Court granted an interlocutory default judgment against Rieger and Ironman on June 12, 2015. The Court later severed Ramsey's claims against Rieger and Ironman into a new lawsuit, No. 82302-CV. On July 1, 2015, the Court signed a Final Judgment against Rieger and Ironman, awarding Ramsey $2,303,000.

The clerk was required to send Ironman and Rieger notice of the Final Judgment pursuant to Rules 306a(3) and 239a of the Texas Rules of Civil Procedure. The clerk's records are believed to show that notice in the form of a letter was dated July 10, 2015, and mailed to both Defendants. While each Defendant ultimately received a copy of the clerk's July 10, 2015 letter, they did not receive it until July 28, 2015, at the earliest. (Ex. 1, ¶ 7-10; Ex. 2, ¶ 6-9).[3]

As soon as Defendants learned that a default judgment had been entered, Matthew Garrett contacted Ironman's insurance agent and learned, for the first time, that the lawsuit papers Garrett previously and timely forwarded to the agent had not been sent to the insurance carrier. (Ex. 1, ¶ 8). The undersigned counsel was immediately retained to represent both Defendants, make an appearance and begin work on preparation of appropriate motions to set aside the default judgment.

Based upon the foregoing, on August ___, 2015, Defendants Ironman and Rieger filed a Motion to Extend Post-Judgment Deadlines with the Court in order to extend the time for them to assert their rights to a new trial, and set aside the default judgment. Now, by the present motion, Defendants ask the Court to grant them a new trial and set aside the default judgment of July 1, 2015. The facts giving rise to the entry of the default judgment are indicative of mistake

---

[3]   It is unclear from the record when the district clerk's office placed the July 10, 2015 letters in the mail. The file copy maintained in the clerk's file shows it was file-stamped at 4:49 p.m., July 10, 2015. (Ex. 4). Given the time the clerk's letter was filed, it may not have been placed into the mail until the following Monday, July 13, 2015. In any event, Defendants did not receive the letter until July 28, 2015, at the earliest.

3

only, not conscious indifference. Moreover, Defendants' failure to file timely answers was not due to their mistake, as the suit papers were promptly forwarded to the insurance agent. Defendants have meritorious defenses to the claims raised in Plaintiff's Petition and Plaintiff will not be prejudiced by an order vacating the default judgment. Justice requires that the default judgment be set aside so that Plaintiff's claims can be determined based on their merit, rather than through a truncated default proceeding.

## ARGUMENT AND AUTHORITY

A.  **Defendants respectfully request this Court to vacate the final judgment and grant a new trial because the default was the result of a mistake, not conscious indifference, Defendants can set up meritorious defenses, and granting a new trial will not prejudice Plaintiff.**

1.  *Controlling standards.*

A court should set aside a default judgment and grant a new trial if a defendant can meet the requirements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). *Craddock* requires the defendant to do the following:

> a.  demonstrate that the failure to file an answer was not intentional or the result of conscious indifference, but was merely a mistake or accident. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *Estate* of *Pollock v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993);
>
> b.  "set up" a meritorious defense.[4] *Director v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994); and,
>
> c.  demonstrate that granting a new trial will not result in delay or prejudice to plaintiff. *Id.*, 889 S.W.2d at 274 n.3.

In evaluating these factors, the court should exercise liberality in favor of the defaulted party. *See Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex. App.—San Antonio 1987, no writ).

---

[4] "Setting up" a meritorious defense means merely that the Defendant must allege facts constituting a defense to Plaintiff's cause of action and must support the allegations with affidavits or other evidence that set up, not prove, a prima facie defense. *Estate of Pollack*, 858 S.W.2d at 392.

4

Accordingly, when all three elements of the *Craddock* test are met, the trial court abuses its discretion if it fails to grant a new trial. *Bank One Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex. 1992).

2. *Defendants' failure to file an answer was a mistake, not conscious indifference.*

The first element of the *Craddock* test requires Defendants to demonstrate that an answer was not filed due to a mistake or accident. *In re R.R.,* 209 S.W.3d at 114. This is because under Texas law, only an intentional failure to file an answer or conscious indifference will allow a default judgment to remain in place. *Id.* The facts set forth in this motion and the attached affidavits demonstrate that Defendants, or Ironman's insurance agent, did not act intentionally or with conscious indifference. The Court should find in favor of Defendants because their failure to answer was the result of a mistake or accident and adequate justification exists for the failure to answer. *See Smith v. Babcock & Wilcox Constr. Co., Inc.,* 913 S.W.2d 467, 468 (Tex. 1995); *Fidelity & Guar. Ins. Co. v. Drewerey Constr. Co.,* 186 S.W.3d 571, 574 (Tex. 2006).

The court should grant a new trial because Defendants' failure to answer was not intentional, but was accidental. Both Defendants were served with process. The lawsuit papers were forwarded to Ironman's insurance agent by email. (Ex. 1, ¶ 6; Ex. 2, ¶ 4; Ex. 3, ¶ 6). Defendants remember this because they had similarly forwarded the lawsuit papers from the Seyda accident to the insurance agent as well. Both Defendants anticipated and expected that they would be defended, as had occurred in the Seyda matter. Ironman's insurance agent, however, did not realize he had received a copy of service papers relating to a new claim, the Ramsey matter. The insurance agent explains in his affidavit the nature of the mere oversight that resulted in the Ramsey petition not being forwarded to the insurance carrier:

> 6. On or about February 2, 2015, pursuant to an ongoing business relationship with Matthew Garrett, I received an e-mail with

5

several attachments. The content of the email involved mainly business matters other than the Ramsey lawsuit. I opened the first two attachments to the email, which pertained to those other business matters. However, by oversight, I did not open the third attachment. Included in the third attachment was a copy of the petition and other lawsuit papers relating to the Ramsey lawsuit. I did not realize that the third attachment to the e-mail included a copy of the petition and other lawsuit papers showing that that this lawsuit had been served upon Ironman and Mr. Rieiger. Had I known that the attachments contained a service copy of the Ramsey lawsuit, I would have immediately forwarded the same to the insurance carrier, consistent with my standard practice, and as I did in the Seyda matter. Also, my usual practice is to routinely read all my emails and attachments; however, on this occasion, I did not see the third attachment.

7. As a result of this oversight, I did not follow standard practice by immediately forwarding the lawsuit to the insurance carrier. The insurance carrier, in turn, did not hire a lawyer to file an answer and defend the Defendants, resulting in a Default Judgment that appears to have been rendered on July 1, 2015. This omissionfailure was the result of an simple oversight and was not the result of conscious indifference. Had the oversight not occurred, I would have forwarded the lawsuit to the insurance carrier and I would have expected the insurance carrier to hire counsel to timely file an answer and otherwise appropriately respond to the lawsuit as it had for the Seyda accident.

(Ex. 3).

Defendants' conduct certainly does not reflect intentional action or conscious indifference to the requirements of a party to litigation. Further, the actions of the insurance agent, while a mistake, also do not reflect intentional action or conscious indifference. He simply did not realize the Ramsey petition was attached to an email addressing other business matters. Defendants desire to dispute the merit of this claim. This is a case of human error and a simple mistake, which could happen to anyone. This is not a case of conscious indifference or intent not to answer the lawsuit. Once Defendants learned of the Final Judgment, they immediately contacted the agent, and now counsel has been retained.

6

3. *Case law supports setting aside the default judgment.*

The present case is an instance of a mistake the law forgives. *See, e.g., Milestone Oper., Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309-10 (Tex. 2012) (defendant's agent testified that he did not remember being served and had not provided suit papers to defendant's attorney); *Bank One v. Moody*, 830 S.W.2d 81, 84-85 (Tex. 1992) (bank president testified bank did not file answer because he erroneously believed the bank had complied with procedures); *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984) (defendant's office staff misplaced citation).

For further example, in *Titan Indem. Co. v. Old South Ins. Group*, 221 S.W.3d 703 (Tex. App. – San Antonio 2007, no pet.), the San Antonio Court of Appeals held the district court abused its discretion by denying a motion for new trial following the entry of a default judgment. In that case, a defendant's general counsel received multiple petitions against other parties, which he forwarded to outside counsel. He later received another petition, which believed, mistakenly, was duplicative of the prior lawsuits. He took no action and a default was entered against the defendant.

On appeal, the court noted that when Schwartz received the initial lawsuit papers, he did not ignore them; rather, he forwarded them to the appropriate outside counsel to be addressed. *Id.* at 709. When he received actual service of process of the remaining two lawsuits, he believed that they were duplicates of the same suit, which had been forwarded to outside counsel. The San Antonio Court of Appeals emphasized that the *Craddock* analysis must be performed within a liberal framework, one which recognizes that "[i]t is a basic tenet of jurisprudence that the law abhors a default because equity is rarely served by a default." *Id.* at 708 (citing *Benefit Planners, LLP v. RenCare, Ltd.*, 81 S.W.3d 855, 857-58 (Tex. App.—San Antonio 2002, pet. denied)). Moreover, "[t]he historical trend in default judgment cases is

7

toward the liberal grant of new trials." *Id.* (citing *Tex. Sting Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 650 (Tex. App.—San Antonio 2002, pet. denied)).

Because the "[c]ontrolling fact … is the absence of a purposeful or bad faith failure to answer," the court in *Titan* determined that Schwartz's failure to appreciate that the subsequent notices of the lawsuits were not mere duplicates of that which he acted upon earlier was a mere mistake, not conduct demonstrating bad faith. Specifically, the Court held: "Schwartz's testimony reveals negligence at best, but it does not establish that he knew there were three different lawsuits and that he simply did not care and intentionally failed to answer two of the lawsuits." *Id.* at 710. Similarly, the insurance agent did not knowingly ignore the Ramsey petition; he simply did not realize he had received it.

Further, in *National Rigging, Inc. v. City of San Antonio*, 657 S.W.2d 171 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.), the Court of Appeals reversed the district court's denial of a motion to set aside a default judgment. There, a party failed to notify legal counsel that the defendant had been served, and, as a result, a default judgment was taken against that entity. The court of appeals again determined that a mistaken belief that service of citation was a duplicate of documents previously received and acted upon was not indicative of intent "to suffer judgment to go by default." *Id.* at 173 (citing *Craddock*, 133 S.W.2d at 125). Thus, the Court held: "We find that the defendant's failure to answer before judgment was not intentional on the part of the president of that company, or the result of his conscious indifference, but was due to a mistake."

Further, a mistaken belief that a claim has been resolved or dismissed negates intentional disregard or conscious indifference. *Ashworth v. Brzoska*, 274 S.W.3d 324, 333 Tex. App.—

8

Houston [14th Dist.] 2008, no pet.). *See also State v. Sledge*, 982 S.W.2d 911, 915-16 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

In deciding whether to set aside a default judgment, the controlling factor is the "absence of a purposeful or bad faith failure to answer ... [and] even a slight excuse will suffice...." *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex. App.—Houston [14th Dist.] 1988, no writ). The facts at issue here compare favorably to those addressed in *Sledge*, *Titan Indemnity* and *National Rigging*, and other cases finding that a default should be set aside due to mistake. Here, there is unmistakable evidence that the defaulting party intended to dispute the claim, and desired to respond to the suit. The Defendants should not be punished when they forwarded the petition and citation to the agent.

4.    *Defendants have meritorious, and likely conclusive, defenses, including the clear absence of proximate cause.*

To prevail on the present motion, Defendants are required only to "set up" a meritorious defense. This simply means they must allege facts that constitute a defense to Plaintiff's causes of action and support the allegations with affidavits or other evidence, proving a *prima facie* defense. *Estate of Pollack*, 858 S.W.2d at 392; *Director*, 889 S.W.2d at 270. Defendants are not required to prove their defenses. *Titan Indem.*, 221 S.W.3d at 711. A meritorious defense is one that, if proved, would cause a different result on retrial, although not necessarily the opposite result. *Liepelt v. Oliviera*, 818 S.W.2d 75, 77 (Tex. App.—Corpus Christi 1991, no writ). The Court is not permitted to consider controverting affidavits on the issue of a meritorious defense. *Estate of Pollack*, 858 S.W.2d at 392.

Proximate cause is a necessary element of a claim for negligence. To appreciate the absence of proximate cause in this case, the Court need look no further than Ramsey's petition. Plaintiff claims that Defendants Ironman and Rieger were negligent because, she says, the Seyda

9

accident involving Rieger occurred on SH 288, the same highway on which Ramsey was traveling. But Rieger did not strike Ramsey's vehicle. Rieger was involved in a completely separate accident occurring long before Ramsey's accident. The Condry Defendants, not Rieger, struck Ramsey's vehicle.

Moreso, the affidavits attached to this motion present facts that set up a causation defense. As Rieger states, the Condry-Ramsey accident occurred "quite a distance" from the location of the Seyda accident. (Ex. 2, ¶ 3). He also confirms that he was not involved in the Condry-Ramsey accident. In fact, he did not even learn that the Condry-Ramsey accident had occurred until much later in 2014. (Ex. 2, ¶ 3). Condry's subsequent accident with Ramsey, long after the Seyda accident occurred, is far too removed from the time and location of the Seyda accident to satisfy the proximate cause element. Condry's independent act of striking Ramsey's vehicle also constitutes a superseding and intervening cause of Ramsey's alleged injuries.

The court should grant a new trial because Defendant have set up a meritorious defense. Ramsey's petition and the Defendants' respective affidavits support the argument that any injuries Ramsey suffered as a result of being struck by Condry were not proximately caused by Rieger or Ironman.

5. *A new trial will not prejudice Plaintiff.*

Finally, the court should grant a new trial because a new trial will not delay or injure Ramsey. Defendants filed an answer simultaneously with this motion. Defendants have also filed a Motion to Extend Post-Judgment Deadlines. All of this activity has occurred since July 28, 2015, the date on which Defendants first acquired actual knowledge of the judgment through their receipt of the clerk's notice letter. No material evidence or witnesses are less available now

10

than they were when Defendant's answer was due. *See Director,* 889 S.W.2d at 270 (stating the purpose of this element is to protect the plaintiff against the sort of delay that would cause it to be disadvantaged in the trial of its case such as the loss of witnesses or other valuable evidence).

In addition, even though not required, Defendants are offering to reimburse Plaintiff's counsel for reasonable expenses incurred in obtaining the default judgment. *See Angelo v. Champions Restaurant Equip. Co.,* 713 S.W.2d 96, 98 (Tex. 1986) (finding failure to offer reimbursement will not preclude a new trial). Defendants are ready to proceed in defending the suit.

The Court has not entered a docket control order, and no discovery has occurred, to counsel's knowledge. The parties will have many months to complete discovery. Ramsey will not be prejudiced by the Court granting the new trial.

For all of these reasons, Defendants have demonstrated that their failure to timely answer the lawsuit was a mistake, that they have meritorious defenses, and that Plaintiff will not be prejudiced by granting a new trial. Defendants, therefore, respectfully request the Court to set aside and vacate the Final Judgment and to grant a new trial.

**B.     The Court should grant a new trial in the interest of justice and fairness.**

The Court has discretion to grant a new trial for "good cause" and in the interest of justice. TEX. R. CIV. P. 320. If any case cries out for setting aside a default judgment on equity grounds, it is this case. The Plaintiff has obtained a $2 million default judgment in a car wreck case when her own petition alleges that Rieger was not even involved in the Condry accident about which she complains. Equity cannot allow this judgment to stand uncorrected.

11

**C.    Defendants are entitled to judgment in their favor or a new trial based upon legally and factually insufficient evidence in support of the judgment (liability and damages).**

The default judgment must be set aside and a new trial granted because Plaintiff has offered legally and factually insufficient evidence in support of its causes of action and the damages ultimately awarded.

### 1.    *Controlling standard*

The court must find insufficient evidence was presented in support of Plaintiff's causes of action when the record reveals:  (1) a complete absence of evidence of a vital fact; or (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; or (3) the evidence offered to prove the vital fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of the vital fact. *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 318 (Tex. 1994).  No more than a scintilla of evidence exists on a vital fact where reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force.  Also, in a "no evidence" review, inference stacking is impermissible.  *Schlumberger v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 859 (Tex. 1968).  The legal equivalent of no evidence occurs when "mere circumstantial evidence" gives rise to inferences equally consistent with two different propositions. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997).

In reviewing a factual sufficiency claim, the court weighs all the evidence, including any evidence contrary to the trial court's judgment. *E.g. Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980).

12

2.     *Plaintiff has not provided sufficient evidence of liability.*

There is no evidence, or factually insufficient evidence, that the injuries alleged were proximately caused by any breach of duty by Defendants. For this reason alone, evidence sufficient to support liability for actual damages is lacking.

3.     *Plaintiff has not provided sufficient evidence to support the damages awarded.*

Moreover, there is legally and factually insufficient evidence to support the damages awarded in the judgment. The judgment entered in this case assesses damages against Defendant in the amount of **$2.3 million**. Plaintiff has not submitted legally and factually sufficient to support the alleged damages asserted. Awards for medical care and future surgery, pain and suffering, or mental anguish must be supported by competent evidence justifying the figure sought and cannot be arbitrary. *See Parkway v. Woodruff*, 901 S.W.3d 434, 444 (Tex. 1995). Based upon the foregoing, Defendants respectfully request this Court to grant a new trial.

**D.     Request for remittitur**

In the event this Court does not set aside the default judgment, Defendants request this Court to suggest a remittitur to Plaintiff in accordance with substantial justice, and, if refused by Plaintiff, order a new trial.

**E.     Request for findings of fact and conclusions of law**

As noted above, the damage award referenced in the default judgment is not supported by any factual findings or conclusions. Defendant respectfully requests this Court to enter findings of fact and conclusions of law in support of the damages asserted in this case.

## CONCLUSION AND PRAYER

THEREFORE, for the above reasons, and in the interest of justice and fairness, Defendants, IRONMAN EXPRESS, LLC and ERIC RAYE RIEGER, ask the Court to vacate the July 1, 2015 Final Judgment, set aside the June 12, 2015 interlocutory default judgment, grant a new trial, and for all other relief to which they are justly entitled.

Respectfully submitted,

BURT, BARR & O'DEA, L.L.P

By:     Jeffry P. O'Dea
        Jeffry P. O'Dea
        State Bar No. 15192400
        3900 Essex Lane, Suite 330
        Houston, Texas 77027
        Telephone: (713) 650-8700
        Facsimile: (713) 655-8383

CHAMBERLAIN, HRDLICKA, WHITE
      WILLIAMS & AUGHTRY

By:     /s/ Kevin D. Jewell
        Kevin D. Jewell
        State Bar No. 00787769
        1200 Smith Street, Suite 1400
        Houston, Texas 77002
        (713) 658-1818
        (713) 658-2553 (fax)

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record in accordance with the electronic service rules on this 26th day of August, 2015 as follows:

/s/ Kevin D. Jewell
Kevin D. Jewell

Scott Sanes
Rice & Sanes, LLP
Pearland Town Center Offices East
11200 Broadway, Suite 2705
Pearland, Texas  77584
(713) 799-8400 (tel.)
(888) 328-7060 (fax)
scottsanes@aol.com

| | | |
|---|---|---|
| ASHLEY NICOLE RAMSEY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| DUSTIN RAY CONDRY, JORG CONDRY, | § | BRAZORIA COUNTY, TEXAS |
| ERIC RAYE RIEGER and IRONMAN | § | |
| EXPRESS, LLC. | § | |
| | § | |
| Defendant | § | 412TH JUDICIAL DISTRICT |

## AFFIDAVIT OF MATTHEW GARRETT

Before me, the undersigned authority, on this day personally appeared Matthew Garrett, who, being by me duly sworn, stated under oath the following:

1. My name is Matthew Garrett. I am over the age of 18 years. I have personal knowledge of the facts stated in this affidavit and I am in all respects qualified to make the same. I am of sound mind, and have never been convicted of a felony or misdemeanor involving moral turpitude. The statements contained herein are true and correct.

2. I am the registered agent of Defendant, Ironman Express, LLC ("Ironman") which was a domestic transportation company with its principal place of business at 501 W. Mulberry in Angleton, Texas. Ironman Express ceased doing business on or about July 30, 2014. After this time I went to work for another company in New Braunfels, Texas and mail addressed to myself and/or Ironman was forwarded from 501 W. Mulberry, Angleton, TX to my address at 4975 IH 35 South, New Braunfels, Texas 78132.

3. On or about April 10, 2014 a vehicle performing work for Ironman was involved in a collision in Brazoria County on SH 288 South with an automobile driven by Irsat Seyda ("the Seyda accident") which accident resulted in a suit being filed in the United States District Court for the Southern District of Texas Houston Division. I submitted that lawsuit to Ironman's insurance agent and the insurance carrier ultimately defended Ironman and Eric Reiger and later settled the case.

4. Unbeknownst to me at the time, the police investigation from the Seyda accident closed SH 288 for a period of time during which time somewhere quite a distance up SH 288 Plaintiff, Ramsey herein, claims that she suffered injuries when her automobile was rear ended by a vehicle owned and operated by the Condry



Defendants herein. I had no notice of the Ramsey-Condry accident which forms the basis of this lawsuit until much later in 2014.

5. In late January, 2015, as registered agent for Ironman, I was served with the Original Petition in this lawsuit by the process server who had previously attempted to serve me with process at the 501 W. Mulberry address in Angleton which was ironman's address when it was doing business. I provided my new address in New Braunfels to the process server by telephone and I also agreed in advance to meet him on HWY 46 in New Braunfels at about 2:00 p.m. to accept service of process.

6. On or about February 2, 2015 after accepting service of this lawsuit I submitted the lawsuit paperwork to Ironman's insurance agent just as I had done in the Seyda matter. Consistent with my practice I anticipated and intended that the insurance carrier would handle the suit in a similarly appropriate matter. Since I knew that the insurance carrier had defended Ironman and Eric Reiger and ultimately settled the Seyda claim, I believed that this matter was being defended. It was always my intention that Ironman and Eric Reiger defend any claims arising out of the April 10, 2014 incident.

7. On or after July 28, 2015 I received Notice of Judgment from the Brazoria County District Clerk indicating that a Final judgment was rendered on July 1, 2015. The notice was mailed to the 501 Mulberry St. address, although by that date the process server knew that I was no longer there. The notice of Final Judgment that I received from the District Clerk was forwarded to me by the post office from the 501 W. Mulberry St. address to my current address in New Braunfels. This was the first notice or knowledge that I had that a Default judgment had rendered.

8. After receiving the Notice of Final Judgment I called Eric Reiger to determine if he knew of the Default judgment or had received notice of the Final Judgment and he had not yet received notice. A short time later Eric Reiger called and indicated that he had just opened mail to find a Notice of Judgment. I then sent the lawsuit papers by e-mail to Logan Batlle, Ironman's insurance agent. Ultimately, I learned that the Logan Batlle agent had not forwarded the lawsuit papers or service documents related to the lawsuit to the insurance carrier in this case as it had done in the Seyda matter. In turn, the insurance carrier did not hire a lawyer to represent Ironman or Eric Reiger and it did not file answers to the suit and ultimately a Final Judgment was rendered.

9. Ironman's and Reiger's failure to answer and respond to the lawsuit was the result of a mistake and not because of conscious indifference.

10. July 28, 2015 is more than 20 days, but less than 90 days, after the date of the judgment, July 1, 2015.

Further affiant sayeth naught."

2

_____
Matthew Garrett

STATE OF TEXAS            §
                          §
COUNTY OF COMAL           §

Before me the undersigned, Matthew Garrett personally appeared and after being duly sworn did make the above affidavit.

Sworn to and subscribed before me on the **25** day of August, 2015.

PAULA M MOLZ
MY COMMISSION EXPIRES
December 12, 2017

_____
Notary Public in and for
The State of Texas

3

| | | |
|---|---|---|
| ASHLEY NICOLE RAMSEY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| DUSTIN RAY CONDRY, JORG CONDRY, | § | BRAZORIA COUNTY, TEXAS |
| ERIC RAYE RIEGER and IRONMAN | § | |
| EXPRESS, LLC. | § | |
| | § | |
| Defendant | § | 412TH JUDICIAL DISTRICT |

## AFFIDAVIT OF ERIC RAYE RIEGER

Before me, the undersigned authority, on this day personally appeared Eric Raye Rieger, who, being by me duly sworn, stated under oath the following:

1.  My name is Eric Raye Rieger. I am over the age of 18 years. I have personal knowledge of the facts stated in this affidavit and I am in all respects qualified to make the same. I am of sound mind, and have never been convicted of a felony or misdemeanor involving moral turpitude. The statements contained herein are true and correct.

2.  On or about April 10, 2014, a vehicle I was driving while performing work for Ironman Express, Inc. was involved in a collision in Brazoria County on SH 288 South with an automobile driven by Irsat Seyda ("the Seyda accident"). The Seyda accident resulted in a suit being filed in the United States District Court for the Southern District of Texas Houston Division against myself and Ironman. After I was served with citation and a copy of the complaint, I provided the suit papers to Ironman, which then submitted the lawsuit papers to its insurance agent. The insurance carrier ultimately defended the lawsuit, then settled the case.

3.  Unbeknownst to me at the time, the police investigation from the Seyda accident closed SH 288 for a long period of time during which--and at a location quite a distance up SH 288 from where the Seyda accident occurred--Plaintiff, Ramsey herein, claims that she suffered injuries when her automobile was rear ended by a vehicle owned and operated by the Condry Defendants herein. I did not hit Ramsey's vehicle and I was not involved in the Ramsey-Condry accident. I had no notice of the Ramsey-Condry accident which forms the basis of this lawsuit until much later in 2014.



**EXHIBIT**

**2**

4. In late January 2015, I was served with process in this lawsuit. After being served in this lawsuit, I submitted the paperwork to Matthew Garrett as I had in the Seyda matter and I assumed and expected that the insurance company had hired, or would hire, a lawyer to defend me as it had in the Seyda case and that eventually this case also would be settled. It was always my intention to be defended in this lawsuit.

5. On or after July 28, 2015, which was just subsequent to a rafting trip that I had taken, Matthew Garrett telephoned me and indicated that he had received notice that a Final judgment had been signed in this case. He asked me if I had received such a notice, but I had not.

6. After learning from Matthew Garrett that he had received Notice of a Final Judgment in this case I checked with the pawnshop next door to 501 W. Mulberry, at which location the postman leaves what little mail that is addressed to me at 501 W. Mulberry, Angleton, Texas. I then discovered that I, too, had been sent letter from the Brazoria County District Clerk stating that a Final Judgment had been entered. The clerk's letter was dated July 10, 2015. A true and correct copy of the clerk's July 10, 2015 letter is attached hereto as Exhibit A. I first learned that a final judgment had been entered in this case, at the earliest, on July 28, 2015, although it may have been a day or two later.

8. I then informed Matthew Garrett that I, too, had now received a Notice of Final judgment and he indicated he would again notify the insurance agent.

9. July 28, 2015 is more than 20 days but less than 90 days after the date of the judgment, July 1, 2015.

Further affiant sayeth naught."



Eric Raye Rieger

STATE OF TEXAS     §
                          §
COUNTY OF BRAZORIA    §

Before me the undersigned, Eric Raye Rieger personally appeared and after being duly sworn did make the above affidavit.

Sworn to and subscribed before me on the 24th day of August, 2015.

Sally Alcocer

Notary Public in and for
The State of Texas

SALLY S. ALCOCER
Notary Public, State of Texas
My Commission Expires
March 22, 2017

| | | |
|---|---|---|
| ASHLEY NICOLE RAMSEY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| DUSTIN RAY CONDRY, JORG CONDRY, | § | BRAZORIA COUNTY, TEXAS |
| ERIC RAYE RIEGER and IRONMAN | § | |
| EXPRESS, LLC. | § | |
| | § | |
| Defendant | § | 412TH JUDICIAL DISTRICT |

## AFFIDAVIT OF LOGAN CHRISTOPHER BATLLE

Before me, the undersigned authority, on this day personally appeared Logan Christopher Batlle, who, being by me duly sworn, stated under oath the following:

1.  "My name is Logan Christopher Batlle. I am over the age of 18 years. I have personal knowledge of the facts stated in this affidavit and I am in all respects qualified to make the same. I am of sound mind and have never been convicted of a felony or misdemeanor involving moral turpitude. The statements contained herein are true and correct.

2.  I am a licensed insurance agent working for McKamie Insurance Agency in Southlake, Texas. Matthew Garrett and Defendant, Ironman Express, LLC ("Ironman"), a domestic transportation company, are among my clients.

3.  On or about April 10, 2014, while performing work for Ironman, a vehicle driven by Defendant, Eric Raye Reiger was involved in a collision in Brazoria County on SH 288 South with an automobile driven by Irsat Seyda ("the Seyda accident") which accident resulted in a suit being filed against Mr. Reiger and Ironman in the United States District Court for the Southern District of Texas Houston Division.

4.  After the complaint and other lawsuit paperwork in the Seyda accident were submitted to me as the agent, I promptly forwarded them to the insurance carrier which is my standard and customary practice. The insurance carrier, in turn, hired counsel to defend Ironman and Reiger, which is its customary practice, and the matter was settled.

5.  Unbeknownst to me at the time, the police investigation from the Seyda accident closed SH 288 for a period of time during which time somewhere quite a distance



EXHIBIT
3

up SH 288 from the Seyda accident, Plaintiff, Ramsey claims that she suffered injuries when her automobile was rear ended by a vehicle owned and operated by the Condry Defendants herein. I had no notice of the Ramsey-Condry accident which forms the basis of this lawsuit until much later in 2014.

6. On or about February 2, 2015, pursuant to an ongoing business relationship with Matthew Garrett, I received an e-mail with several attachments. The content of the email involved mainly business matters other than the Ramsey lawsuit. I opened the first two attachments to the email, which pertained to those other business matters. However, by oversight, I did not open the third attachment. Included in the third attachment was a copy of the petition and other lawsuit papers relating to the Ramsey lawsuit. I did not realize that the third attachment to the e-mail included a copy of the petition and other lawsuit papers showing that that this lawsuit had been served upon Ironman and Mr. Rieger. Had I known that the attachments contained a service copy of the Ramsey lawsuit, I would have immediately forwarded the same to the insurance carrier, consistent with my standard practice, and as I did in the Seyda matter. Also, my usual practice is to routinely read all my emails and attachments; however, on this occasion, I did not see the third attachment.

7. As a result of this oversight, I did not follow standard practice by immediately forwarding the lawsuit to the insurance carrier. The insurance carrier, in turn, did not hire a lawyer to file an answer and defend the Defendants, resulting in a Default Judgment that appears to have been rendered on July 1, 2015. This omission was the result of an simple oversight and was not the result of conscious indifference. Had the oversight not occurred, I would have forwarded the lawsuit to the insurance carrier and I would have expected the insurance carrier to hire counsel to timely file an answer and otherwise appropriately respond to the lawsuit as it had for the Seyda accident.

Further affiant sayeth naugtht."

Logan Christopher Batlle

STATE OF TEXAS    §
              §
COUNTY OF Tarrant  §

2

Before me the undersigned, Logan Christopher Batlle personally appeared and after being duly sworn did make the above affidavit.

Sworn to and subscribed before me on the 25 day of August 2015

Brittany Chapman

8·25·15

BRITTANY LEE CHAPMAN
Notary Public, State of Texas
My Commission Expires
July 23, 2018

Notary Public in and for
The State of Texas

3



111 E. Locust, Ste. 500
Angleton, TX 77515
www.brazoria-county.com

979-864-1316
979-388-1316
281-756-1316



## RHONDA BARCHAK
### BRAZORIA COUNTY DISTRICT CLERK

July 10, 2015

Eric Raye Rieger
Ironman Express
501 W Mulberry
Angleton TX 77515

RE: Cause No.: 82302-CV, In the 412th District Court
Style: Ashley Nicole Ramsey vs. Ironman Express LLC, et al

FILED
at 4:49 o'clock Y M.

JUL 1 0 2015

Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

To Whom It May Concern:

On July 1, 2015, the following order was entered: **Final Judgment.**

In accordance with:

> Rules of Civil Procedure 306 (a) 3, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first–class mail advising that the judgment or order was signed.

A certified copy, with the exception of sealed documents, may be purchased for $1 per page plus $1 for certification by contacting us at the above address, or ordering online at www.brazoria-county.com/dclerk.

Please note we do not accept personal checks. All payments must be made by cash, Cashier's Check, Money Order or credit card made payable to **Rhonda Barchak, District Clerk.**

Sincerely,

**RHONDA BARCHAK, District Clerk**

**FILE COPY**

Melinda Cloud, Deputy

CC: file

Notice of Judgment

EXHIBIT
4

Filed for Record
11/9/2015 1:43:45 PM
Rhonda Barchak, District Clerk
Brazoria County, Texas
82302-CV
Kim Mire, Deputy

NO. 82302-CV

| | | |
|---|---|---|
| ASHLEY NICOLE RAMSEY, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | BRAZORIA COUNTY, TEXAS |
| ERIC RAYE RIEGER, and | § | |
| IRONMAN EXPRESS, LLC | § | |
| | § | |
| Defendants | § | 412th JUDICIAL DISTRICT |

## DEFENDANT'S NOTICE OF APPEAL

TO THE HONORABLE COURT:

Defendant Eric Raye Rieger intends to appeal the trial court's Order signed on November 3, 2015, pursuant to Rules 25.1(d) and 26.1(c) of the Texas Rules of Appellate Procedure, as well as from the trial court's judgment dated July 1, 2015. This appeal is taken to either the First or Fourteenth Court of Appeals in Houston, Texas. This is a restricted appeal.

Respectfully submitted,

BURT, BARR & O'DEA, L.L.P

By: ___/s/ Jeffry P. O'Dea___
Jeffry P. O'Dea
State Bar No. 15192400
3900 Essex Lane, Suite 330
Houston, Texas 77027
Telephone: (713) 650-8700
Facsimile: (713) 655-8383

CHAMBERLAIN, HRDLICKA, WHITE
WILLIAMS & AUGHTRY


By:   /s/ *Kevin D. Jewell*
     Kevin D. Jewell
     State Bar No. 00787769
     1200 Smith Street, Suite 1400
     Houston, Texas 77002
     (713) 658-1818
     (713) 658-2553 (fax)
ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Motion to Extend Post-Judgment Deadlines has been forwarded to the following counsel of record in accordance with the electronic service rules on this ___ day of November, 2015 as follows:


Scott Sanes
Rice & Sanes, LLP
Pearland Town Center Offices East
11200 Broadway, Suite 2705
Pearland, Texas 77584
(713) 799-8400 (tel.)
(888) 328-7060 (fax)
scottsanes@aol.com


       /s/ Kevin D. Jewell
       Kevin D. Jewell


2020872.1
003925..000032

2